Ferdinand E. Gamache
vs.    Eq. No. 10731.
Arthemise Gamache

May 15, 1931.

BLODGETT, P. J. Heard upon prayer for a preliminary injunction.

The bill alleges complainant to be the owner of a grocery and meat business in East Providence; that he transported to said store a quantity of provisions from a store formerly owned by him in Fall River; that respondent

did advance to him certain sums of money, the exact amount not being known, which were applied to the payment in part of certain notes given to one Henry Mercier at the time of the purchase of said business and in part to the reduction of a mortgage upon certain real estate executed by himself and respondent; that he secured a lease for two years from January 1, 1931, of the premises in which said business was located; that respondent never claimed any interest in said business carried on by him; that respondent is his wife and that he has commenced an action for divorce from her which is now pending; that on August 4, 1927, complainant and respondent purchased a certain lot of land and a house thereon in East Providence, which is described in said bill, the purchase price being $5,500.00 paid as follows: by a first mortgage assumed by complainant and respondent for $3,000.00, the balance being paid from the proceeds of a second mortgage upon said real estate for $2,200 and $300 in cash paid by respondent; that complainant from his earnings in said business paid $1,480 upon the principal of said second mortgage; that from the date of his marriage to respondent up to February 21, 1931, all the earnings of complainant from said business were applied to the payment of notes to Mercier for the purchase of same, to the payment of taxes upon said real estate, to the payment of interest upon said first mortgage of $3000, to the erection of a garage upon said real estate at a cost of $325, to the erection of a sun parlor upon said premises at a cost of $200, and to the maintenance of complainant and respondent; that on February 21, 1931, complainant and respondent separated; that on February 23, 1931, respondent caused a writ of replevin to be issued by which all the goods, stock and fixtures of said business were replevied by respondent from complainant, the value thereof being alleged in said writ as $1200, said writ being made returnable to this Court April 23, 1931; that the fair value of said stock is $2500; that the value of accounts receivable from said business is $750; that until the filing of this bill complainant believed the said real estate had been conveyed to himself and wife as tenants in common, and then learned from his attorney that same had been conveyed to respondent;

The prayer of the bill is:

(1) That respondent be enjoined from prosecuting said writ of replevin.

(2) That respondent be enjoined from transferring said real estate.

(3) That a receiver be appointed in charge of said grocery business, and to conduct the business and to sell and dispose of the same.

(6) That said business be declared the sole property of complainant.

(7) That said real estate be declared to be the property of complainant and respondent as tenants in common.

(8) That a commissioner be appointed to make a partition of said real estate by a sale of same and a distribution of the proceeds of said sale to the tenants in common.

The answer denies all material allegations.

The record shows that complainant had been carrying on a grocery and meat business in Fall River and that after his marriage to respondent said stock and business was transferred to the store in East Providence then conducted by Henry Mercier, a son-in-law of respondent, and that complainant purchased Mercier's interest in said business, giving notes therefor.

The main dispute between complainant and respondent is as to who furnished the money to carry on the business, and who furnished the money to purchase the land and bungalow in East Providence involved in this action.

Respondent claims to have provided all the money that was paid at time of purchase of the real estate and this is admitted by complainant.

Complainant claims that all the income from the grocery business was devoted to payment of the notes given for the purchase of same. and also for reducing the second mortgage on said real estate.

Respondent further contends that complainant was conducting said business for her and was not the owner of same, and that she provided all the money for the purchase of the business.

The Court is satisfied from the testimony that the purchase of the real estate in East Providence was made from money furnished by respondent and that complainant has failed to meet the burden of proof required. The prayers of the bill asking for the conveyance of a one-half interest in said real estate to him are therefore denied, and also the prayer for a partition by sale of said premises.

As to the interest of complainant in said grocery business there is now pending in this Court an action of replevin brought by respondent to determine the title to the goods in said store.

As neither party to this action has filed any motion to compel an election of remedies, the Court must determine the question as to whether the parties were partners.

> Quidnick Co. vs. Chafee, 13 R. I. 367.

There was no agreement in writing between the parties. Complainant, in support of his claim, produced a blank check of the Warren Branch of the Industrial Trust Co., in which bank the funds of the business were deposited, on which is printed the words "Maplehurst Market, Ferdinand Gamache Proprietor" (Complainant's Ex. A.) Complainant further produced a lease to himself of the premises in which the business was carried on (Compl't's Ex. B.) The testimony shows complainant drew $25.00 a week from said business.

The record further shows that one Henry Mercier, a son-in-law of respondent, carried on this business up to Oc-tober 10, 1927. On that date Mercier executed a bill of sale of one-half interest in said business to Arthemise Gamache, the respondent in the present action. Apparently, on October 10, 1927, the respondent and Mercier owned the business. The lease taken by complainant is dated December 31, 1930. It was shortly after this date that the quarrels between complainant and respondent culminated in a petition for divorce brought against respondent by complainant.

Complainant alleges in his bill that he removed from Fall River in July, 1927, and entered into a co-partnership with said Mercier, and from that date until October, 1928, the business was conducted by them as co-partners, and that in October, 1928, although the bill of sale was executed to respondent, he purchased the interest of said Mercier in said business and the partnership was dissolved. Complainant further alleges that the purchase from Mercier was paid for in part by a stock of groceries and provisions moved to the East Providence store from a similar business carried on by him in Fall River and in part from the profits of said business after his removal to East Providence.

The complainant is the sole witness in his own behalf and the question whether a partnership existed between himself and the respondent, or between himself and Mercier, depends upon his own testimony, whatever documentary evidence exists and the surrounding circumstances. The respondent was evidently, from the testimony, the financial backer of the enterprise as the only documentary evidence of payments on record consists of checks issued by respondent and cashed. Both the respondent and Mercier deny there was any partnership existing either between complainant and respondent, or between complainant and Mercier.

Mercier testifies he acquired the store in 1927, and on October 10, 1927, he conveyed to respondent a one-half in-

terest in said business for $1500 payable in notes executed by respondent and subsequently paid; that he had no partnership agreement with complainant; that on the books of the company complainant was credited with $25 a week for wages and that these entries were made by complainant; that in 1929 he sold his remaining one-half interest to respondent for $1500 paid for by notes as before; that the bank account in Warren was kept in the name of "Maplehurst Market, Ferdinand Gamache Proprietor" (Compl't's Ex. A) but that complainant drew no profits from the business; that he continued to credit himself on the books with $25 a week wages; that every week complainant and respondent met with him at house of respondent and complainant turned over to respondent all money received during the week; that the stock transferred by complainant from his Fall River store was put in the cellar of the Warren store and was either sold by complainant or was used by complainant and respondent in respondent's home.

Respondent testified that she purchased and paid for the entire interest in the business; that the lease of the premises in which the business was located was taken in complainant's name with her permission and the rent paid like other bills from the receipts of the business; that complainant never claimed to have any interest in said business until shortly before the bringing of the replevin action by her and the filing of a petition for divorce by complainant; that complainant never had any interest as a partner in said business and simply drew wages as a clerk; that she intended when the real estate in Warren was purchased to give him a half interest in same provided he conducted himself right; in answer to Q. 70 (Cross-examination:

"Now you said a moment ago that frequently when you and your husband had difficulties, small quarrels, that your husband talked about the store belonging to both of you, is that right?"

A. "Yes, he said it was because he had brought stock."

Q. 71. "Did you ever tell him then that he had no interest in it?"

A. "Yes, sir."

Q. 72. "When did you ever tell him he had no interest in the store?"

A. "I have always told him. I told him if he didn't do right I would put in another."

Q. 73. "You told him you would fire him if not a good clerk, is that right?"

A. "I told him if he didn't talk so much I would have him there, but if he calumniated me as he did I would take him away from there."

The claim of complainant that he had a partnership interest in the business rests upon the fact that first, when he removed from Fall River to Warren, he brought some stock of groceries and so forth from the Fall River store to the Warren store; second, that he was allowed to take out a lease of the premises in which the store was located in his own name; and third, that the bank account was kept in his name as proprietor. As to the first, there is no adequate testimony as to the amount and value of these goods and there is testimony which tends to show that complainant from time to time sold these goods for his own account, and that a portion of them were used in the house of respondent for the support of respondent and complainant. There should have been at the time of the transfer an inventory taken of the amount and value of the goods to enable a Court, in the event of a subsequent dispute, to determine the relative importance of such consignment as affecting the question of an existing partnership agreement as between Mercier and complainant, or complainant and respondent.

The only deduction the Court can draw from all this testimony is that

respondent did intend, at the time the marriage was consummated and the removal of the business to Warren, to give an interest not only in said business but also in the real estate named in said bill, to the complainant provided, as respondent says, complainant did right, but that the money for the purchase of the business and real estate came from the respondent mainly, as there is no competent testimony to show that the profits from a comparatively small business could reach such an amount as was paid in cash for the business and real estate, and there is no adequate testimony as to the amount of such profits or as to the balances of the bank account.

The lease in question was executed December 31, 1930, a short period before the final quarrel of complainant and respondent in February, 1931, which led to the replevin action and the divorce petition. That complainant was permitted to take this lease in his own name, taken in conjunction with other testimony, would have a strong tendency to evidence some agreement between complainant and respondent. The complainant evidently before this period had made some claim to a partnership interest in the business and had some knowledge that this claim was disputed. Then was the time to have had some definite memorandum made of the situation of the parties. The fact that the bank account was allowed to be kept in his name as proprietor is another fact which would strongly tend to show some agreement between complainant and respondent. The respondent was evidently the dominant party in the matter and held the purse strings.

The burden is upon complainant to show by a preponderance of the testimony that he is entitled to have an evidently tentative agreement consummated.

A partnership requires a community of interest in profits and losses.

There is no direct testimony in present case as to any sharing of profits and losses. The record seems to show the parties would meet at the end of each week and that complainant would turn over to respondent the amount of the receipts. The record also appears to show that complainant received a stated sum each week for services. There is no evidence that he failed to act honestly, but the evidence does seem to show that during the entire conduct of the business he acted as a clerk rather than as a partner.

Prayer for injunction and permanent receiver denied.

For complainant: Archambault & Archambault.

For respondent: William H. McSoley.